UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LORENA MIDIA a/k/a Tabitha Camile Humber,

                            Petitioner,

        v.                                                    **DECISION AND ORDER**
                                                                 15-CV-912S
UNITED STATES OF AMERICA,                          13-CR-170S

                            Respondent.

## I. INTRODUCTION

Presently before this Court is the Motion of *pro se* Petitioner Lorena Midia to Vacate, Set Aside, or Correct her Sentence pursuant to 28 U.S.C. § 2255.   For the reasons discussed below, Petitioner's § 2255 motion is denied.

## II. BACKGROUND

On August 30, 2010, and again on October 28 and 29, 2010, Petitioner made false statements in an application for a United States passport.   In her application, Petitioner claimed to be a United States citizen using the name of another real person and presenting identification issued to that person.   On October 29, 2010, Petitioner was questioned by federal law enforcement agents.   A criminal complaint was filed against her on December 20, 2010, but she was not indicted until August 1, 2013, after her extradition from Canada to the United States.  (See Docket Nos. 1, 2).[1]

On February 18, 2015, Petitioner appeared before this Court and pled guilty to Count 6 of the Indictment, charging a violation of Title 18, United States Code, Sections 1028A(a)(1) and (b)(2) (aggravated identity theft).  (See Docket No. 2, 4-5.)  The plea

---

[1] All docket numbers refer to the underlying criminal docket, 13-CR-170S.

agreement signed by Petitioner reflects her understanding that the maximum and minimum penalties that could be imposed at sentencing were a mandatory two-year term of imprisonment and a fine of $250,000, or both.  (Plea Agreement ¶ 1, Docket No. 23.)

By entering into the plea agreement Petitioner "knowingly waive[d] the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 7, . . . notwithstanding the manner in which the Court determines the sentence."  (Id. ¶ 15.)  Petitioner further understood "that by agreeing to not collaterally attack the sentence, [Petitioner] is waiving the right to challenge the sentence in the event that in the future [Petitioner] becomes aware of previously unknown facts or a change in the law which the [Petitioner] believes would justify a decrease in [her] sentence."  (Id. ¶ 16.)  Petitioner was sentenced on June 24, 2015 to a mandatory term of incarceration of 24 months and no fines.  (Docket No. 31.)  The incarceration sentence was within the range set forth in the plea agreement.  Petitioner filed no appeal from her sentence.

Petitioner filed the instant § 2255 motion on October 19, 2015.  (Docket No. 32.)  In her motion, Petitioner alleges that on October 29, 2010, one of the federal law enforcement agents who conducted her initial questioning harassed her by making sexual comments and touching her inappropriately.  Petitioner did not mention these allegations to probation when she was interviewed prior to sentencing (see Presentence Investigation Report, Docket No. 30), nor to this Court during the plea or sentencing proceedings.  In a sentencing letter submitted to this Court, Petitioner discussed the

night in question, including her frustration with what she had understood to be a release from criminal liability by the federal agent who questioned her, but again did not mention sexual harassment or other misconduct.   (Docket No. 36.)   Respondent filed an opposition to the § 2255 motion on April 4, 2016.   (Docket No. 38.)   Petitioner did not submit a reply.

### III. DISCUSSION

**A.      Petitioner's § 2255 Motion**

Twenty-eight   U.S.C.   § 2255   allows   federal   prisoners   to   challenge   the constitutionality of their sentences.   That section provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).   The Second Circuit has held that a "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice."   Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted)).   Petitioner bears the burden of proving such a fundamental defect.   See Galviz Zapata v. United States, 431 F.3d 395, 399 (2d Cir. 2005) (citing Williams v. United States, 481 F.2d 339, 346 (2d Cir. 1973)).

Petitioner contends that she received ineffective assistance of counsel because

her attorney should have moved to dismiss the charges against her "on grounds of violation of due process, sexual harassment, bodily integrity, and involuntary servitude" and that she would not have pled guilty if her attorney had advised her that it was her constitutional right to be free from sexual harassment. (Docket No. 32, Mot. to Vacate at 47.) This Court construes the *pro se* arguments of Petitioner's § 2255 motion liberally. Marmolejo v. United States, 196 F.3d 377, 378 (2d Cir. 1999) (per curiam).

As part of her plea agreement, Petitioner "knowingly waive[d] the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the [agreed] sentencing range." (Plea Agreement ¶ 15.) It is by now well established that a knowing and voluntary waiver made as part of a plea agreement is generally enforceable. United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011); United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001). "An enforceable waiver bars claims based on grounds that arose after, as well as before, the [plea] agreement was signed." Muniz v. United States, 360 F. Supp. 2d 574, 577 (S.D.N.Y. 2005). Here, Petitioner was sentenced to the mandatory two years incarceration set forth in the plea agreement, rendering the waiver enforceable.

"However, a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, here, the plea agreement." Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002), *cert. denied*, 537 U.S. 1146 (2003). In challenging counsel's effectiveness in connection with the plea agreement itself, a petitioner is challenging the constitutionality of the process by which she waived her right to collaterally attack the sentence. Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008), *cert. denied*, 555 U.S. 1197 (2009).

Specifically, "although challenging the attorney's role in shaping the defendant's bargaining position cannot avoid the waiver, challenging the attorney's *advice* about that bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct, does." Id. at 138-39 (emphasis in original).

Accordingly, this Court must consider whether Petitioner states "a 'meritorious' claim that 'the waiver was the result of ineffective assistance of counsel.'" Brown v. United States, 637 F. Supp. 2d 212, 217 (S.D.N.Y. 2009) (quoting United States v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004)). To establish this, Petitioner has the burden to "show both that [her] counsel's performance was deficient as measured by objective professional standards, and that this deficiency prejudiced [her] defense." Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000); Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).

The failure to establish either deficient performance or sufficient prejudice will defeat an ineffective assistance claim. Strickland, 466 U.S. at 700. Proving sufficient prejudice requires Petitioner to show that there is a reasonable probability that, but for her counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 688. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. at 697.

Petitioner contends she entered into the plea negotiations due to her attorney's representation that the alleged sexual harassment by the federal agent who questioned

her "did not matter" because "federal agents were like gods."  She further contends that she did not knowingly enter her plea because her counsel should have moved to dismiss the indictment due to the alleged conduct of the federal agent.  However, in this case, even if Petitioner "could establish that this failure was objectively unreasonable, [she] cannot prove that, but for this failure, the outcome of the case would have been different."  See United States v. Bagley, 216 F.3d 1073 (2d Cir. 2000) (table).

This Court agrees with the Government's argument that Petitioner's claim of violation of due process due to sexual harassment by a federal agent is best considered under the umbrella of outrageous government conduct.  The outrageous government conduct defense is based upon violations of the Due Process Clause of the Fifth Amendment to the United States Constitution.  United States v. Russell, 411 U.S. 423, 431, 93 S. Ct. 1637, 1643, 36 L. Ed. 2d 366 (1973) (recognizing that the Court, "may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction").  "[T]o obtain dismissal of an indictment based upon a claim of outrageous governmental conduct, a defendant must establish that the government engaged in outrageous behavior in connection with the alleged criminal events and that due process considerations bar the government from prosecuting her."  United States v. Cuervelo, 949 F.2d 559, 565 (2d Cir. 1991).  "The paradigm examples of conscience-shocking conduct are egregious invasions of individuals rights."  United States v. Rahman, 189 F.3d 88, 131 (2d Cir. 1999); see also United States v. Al Kassar, 660 F.3d 108, 121 (2d Cir. 2011) ("Generally, to be 'outrageous' the government's involvement in a crime must involve either coercion or a

violation of the defendant's person."). Claims of outrageous government conduct are frequently raised but rarely succeed, because "the burden of establishing outrageous investigatory conduct is very heavy" in light of the "well-established deference to the Government's choice of investigatory methods." Rahman, 189 F.3d at 131 (citations omitted); see also United States v. Dyke, 718 F.3d 1282, 1285-89 (10th Cir. 2013) (describing development and critiques of the outrageous-government-conduct defense); United States v. Sabri, 973 F. Supp. 134, 146 (W.D.N.Y. 1996) (noting that dismissal of an indictment due to outrageous government conduct is rare).

Petitioner's allegations of sexual harassment, if true, would certainly be reprehensible, but would not have merited dismissal of the indictment. First, there is no link between Petitioner's allegations of harrassment and the evidence in her case. She does not claim that the sexual comments or touching led her to confess, or that the evidence against her was otherwise improperly obtained. This case is therefore easily distinguished from successful claims of outrageous government conduct due to violation of a defendant's person. In Rochin v. California, for example, the Supreme Court found pumping a defendant's stomach against his will to obtain evidence to be a violation of due process because "[i]llegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities." 342 U.S. 165, 172, 72 S. Ct. 205, 96 L. Ed. 183 (1952). Second, the misconduct alleged was not "sufficiently outrageous" to violate due process. See United States v. Williams, 372 F.3d 96, 112 (2d Cir. 2004) (no violation of due process where prosecutors knew that defendant's pre-trial counsel had

a conflict of interest that "pitted [his] own self-interest agaist that of his client, for nearly two years") (citing <u>Cuervelo</u>, 949 F.2d at 565, 568 (remanding for factfinding where there was an "alleged sexual relationship between a principal undercover agent and a person who [was] thereafter charged"); <u>United States v. Chin</u>, 934 F.2d 393, 398-99, 399 n. 4  (2d Cir. 1991) (citing cases where "extreme physical coercion" may satisfy the outrageousness requirement and suggesting that "psychological torture" might do so as well); <u>Sabri</u>, 973 F.Supp. at 147 (dismissing a charge where the government used as an informant "the defendant's attorney, and . . . the attorney-client relationship was the vehicle used to aide in the informant's ability to obtain admissions from the defendant")).

Because Petitioner has not shown outrageous government conduct sufficient to result in dismissal of the indicment against her, she has also not met her burden to show that the outcome of her proceeding would have changed had her attorney pursued her claims of sexual harrassment.  Accordingly, Petitioner's § 2255 motion is denied.[2]

## B.    Certificate of Appealability

For a certificate of appealability to issue, the petitioner must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make the required "substantial showing" the petitioner must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  <u>Rhagi v. Artuz</u>, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations and

---

[2] Although Petitioner's claims of inappropriate sexual comments and contact are not properly pursued through a § 2255 motion, she may still be able to make a civil claim against the federal agent under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).

internal quotation marks omitted), *cert. denied*, 538 U.S. 950 (2003).   Petitioner has made no such substantial showing of the denial of a constitutional right in this case.

## IV. CONCLUSION

For the reasons stated above, Petitioner's Motion to Vacate, Set Aside or Correct her Sentence is denied.   If Petitioner wishes to appeal, she must file a Notice of Appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment in this action.   Requests to proceed on appeal as a poor person, if any, must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## V. ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct her Sentence and Conviction pursuant to 28 U.S.C. § 2255 (Docket No. 32) is DENIED.

FURTHER, that a Certificate of Appealability pursuant to 28 U.S.C. § 2253 is DENIED.

FURTHER, it is hereby certified that any appeal taken *in forma pauperis* would not be taken in good faith, pursuant to 28 U.S.C. § 1915(a)(3).

FURTHER, that the Clerk of the Court is directed to close 15-CV-912S.

SO ORDERED.

Dated: January 6, 2017
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge